UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICARDO BAILEY,

    Petitioner,

v.                                                                          Case No. 6:10-cv-662-Orl-31DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

## **ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 8). Upon consideration of the amended petition, the Court ordered Respondents to show cause why the relief sought in the amended petition should not be granted. Thereafter, Respondents filed a response to the amended petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 10). Petitioner filed a reply to the response (Doc. No. 17).

Petitioner alleges five claims for relief in his amended habeas petition. For the following reasons, the amended petition is denied.

### I.   *Procedural History and Facts Adduced at Trial*

Petitioner was charged by information with two counts of sexual battery with a deadly weapon or physical force (counts one and four), kidnapping with intent to commit a felony (count two), home invasion robbery (count three), burglary of a dwelling with an

assault or battery with a weapon (count five), aggravated assault with a deadly weapon (count six), and burglary of a conveyance with an assault or battery (count seven). A trial was conducted.

Samah Chihi ("Chihi") testified that on the morning of October 3, 2004, at approximately 6:30, she left her apartment to go to work. On her way to the car, she observed a man wearing white pants, a white shirt, and white socks attempting to speak to her roommate who was getting in her car. Chihi said the man subsequently approached her vehicle, started talking to her, pulled a knife, partially cut her seatbelt, and forced her into the passenger seat. Chihi testified that the man drove her vehicle to the car wash area in her apartment complex and forced her to perform oral sex on him. According to Chihi, Petitioner also took her cellular phone and made approximately three calls but did not have any conversations.

She stated that Petitioner then drove the vehicle back to her apartment and directed her into the apartment at which time he took some jewelry from the apartment and again forced her to perform oral sex. Chihi testified that Petitioner then directed her to knock on the doors of her neighbors because he needed money. Chihi said she knocked on a couple of doors, but no one answered until she knocked on the door of Eleigha Ward ("Ward"). Chihi stated that Ward opened her door and Petitioner pulled her inside of Ward's apartment and held a knife on both of them. Ward had her infant son in the apartment at the time. Chihi testified that Petitioner kept her and Ward together once they were inside the apartment.

2

Chihi said that Ward gave Petitioner $50, which he returned. Chihi testified that Petitioner expressed remorse for what he had done, apologized, and prayed with them. She stated that Petitioner allowed her to leave and gave her back her rings. Chihi went to her apartment but did not call the police because she was afraid. A few minutes later, however, she heard a loud noise and someone running. Chihi said that Ward then knocked on her door and said that Petitioner was gone, and Ward called the police.

Likewise, Ward testified that she was awakened by a knock on her door on the morning of the incident. Recognizing Chihi, she opened the door at which time Petitioner put a knife to her throat and came into her apartment. Ward testified that Petitioner did not take anything from her, apologized for his actions, and prayed with them. Ward said that Petitioner allowed Chihi to leave and then opened the door to see where Chihi went at which time she pushed Petitioner out of the apartment and locked the door. She testified that she heard Petitioner run away and she called the police.

Petitioner testified that he had been at a club in Orlando on the morning of the incident and after leaving the club came to the victims' apartment complex with a friend whose girlfriend lived there. According to Petitioner, he wanted to smoke some marijuana so he went in search of someone from whom to purchase it. He said that he saw Chihi sitting on the stairs smoking and approached her about obtaining some marijuana. Petitioner testified that Chihi took him to Ward's apartment where he obtained some marijuana. He said that Chihi then drove him to a convenience store near the apartment to buy rolling papers. Petitioner testified that he and Chihi went to her apartment, smoked

3

marijuana, and she willingly performed oral sex on him. According to Petitioner, the two were going to have sexual intercourse, but before they did, Chihi said he had to pay her money. In response, Petitioner said that he told her he was married and would not pay her. Petitioner testified that the victim threatened to call the police and say that he raped her if he did not pay her money. Petitioner said that he then left the apartment.

The jury found Petitioner guilty as charged of counts one, four, five, six, and seven and guilty of the lesser-included offense of false imprisonment as to count two and the lesser-included offense of petit theft as to count three. The state court sentenced Petitioner to concurrent twenty-five year terms of imprisonment for the sexual battery counts (counts one and four), to five years of supervised probation for counts two and six, to sixty days time served for count three, and to ten years of probation for counts five and seven.

Petitioner filed a motion to correct an illegal sentence. The state court granted the motion and resentenced Petitioner to concurrent twenty-year terms of imprisonment for counts one and four to be followed by five years of sex offender probation, to concurrent five-year terms of probation for counts two, five, six and seven, and to sixty days time served for count three. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The state court denied the motion. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v.*

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

6

*Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III. *Analysis*

  A. *Claim One*

Petitioner asserts that the trial court erred by denying his motion for new trial. In support of this claim, Petitioner contends that the trial court improperly ruled that some of his testimony on direct examination concerning statements allegedly made by Chihi was hearsay. Specifically, Petitioner refers to his testimony related to Chihi's purported offer to have sex with him in exchange for money. Petitioner argues that the trial court's ruling deprived him of the ability to present his defense and subsequently allowed the prosecutor to impeach him.

7

Petitioner raised this claim on direct appeal. The Fifth District Court of Appeal of Florida affirmed but noted that the trial court improperly sustained various hearsay objections. *Bailey v. State*, 954 So. 2d 1264 (Fla. 5th DCA 2007). The appellate court concluded, however, that the error was harmless because Petitioner "was later able to testify to those matters which had initially been wrongfully excluded." *Id.*

"Federal habeas corpus relief based on evidentiary rulings will not be granted unless it goes to the fundamental fairness of the trial." *McCoy v. Newsome*, 953 F.2d 1252, 1265 (11th Cir. 1992); *see also Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("We review questions of state law in federal habeas proceedings only to determine whether the alleged errors were so critical or important to the outcome of the trial to render 'the entire trial fundamentally unfair.'"). The state trial error must have been "material in the sense of a crucial, critical, highly significant factor." *Tejada*, 941 F.2d at 1560 (quotation omitted) (citations omitted); *see also Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983) (generally, a federal court will not review a state trial judge's ruling with respect to the admissibility of evidence; an erroneous ruling alone does not warrant habeas corpus relief); *Palmariello v. Superintendent of M.C.I. Norfolk*, 873 F.2d 491, 494 (1st Cir. 1989) ("Habeas review does not ordinarily encompass garden variety evidentiary rulings.").

In the present case, Petitioner has not demonstrated that the trial court's evidentiary ruling that the aforementioned testimony was hearsay deprived him of a fundamentally fair trial. The record reflects that although the trial court initially held that Petitioner's testimony regarding statements Chihi made were hearsay, any error in the ruling was

8

rectified on redirect. During cross-examination, the prosecutor attempted to impeach Petitioner's credibility by asking him additional questions about his testimony that Chihi offered him sex in exchange for money. In response to the prosecutor's questions, Petitioner testified that Chihi threatened to call the police and tell them that Petitioner raped her if he did not pay her. The prosecutor asked Petitioner why he did not offer this testimony on direct examination. Defense counsel objected, and the trial court ruled that the defense could clarify on redirect that Petitioner was unable to offer this testimony because defense counsel had not been allowed to ask additional questions based on the trial court's ruling that the testimony was hearsay. Petitioner, therefore, was able to testify on redirect that Chihi's motive for calling the police was because he refused to pay her for sex.

Furthermore, Petitioner was able to clarify that the reason he did not mention Chihi's threat on direct examination was because of the trial court's hearsay ruling and defense counsel's inability to ask additional questions concerning the victim's purported statements. Thus, Petitioner has not established that the trial court's ruling had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (holding that the petitioner must establish that the trial error had a substantial and injurious effect or influence in determining the jury's verdict). Accordingly, the state court's evidentiary ruling did not deprive Petitioner of a fundamentally fair trial, and claim one is denied pursuant to Section 2254(d).

B.  *Claim Two*

Petitioner asserts that counsel rendered ineffective assistance by failing to investigate and present an alibi witness and other evidence. Specifically, Petitioner contends that counsel should have interviewed the clerk, who was working at a convenience store near Chihi's apartment on the morning of the incident, and obtained the store's surveillance video from the morning of the incident.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. The state court first noted that Petitioner's claim was legally insufficient because he failed to identify the witness (the clerk) or prove that the clerk was available to testify at trial. The state court further reasoned that even if the purported witness had been called and the surveillance video had been admitted, neither would have established what happened in Chihi's vehicle or apartment.

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. Mar. 7, 1996). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id.*

Petitioner has failed to present evidence of actual testimony or any affidavit from the convenience store clerk. Thus, Petitioner has not made the requisite factual showing as to this purported witness. Petitioner's self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Furthermore, Petitioner has not demonstrated that the state court's determination is contrary to, or an unreasonable application of, clearly established federal law. At trial, Petitioner testified that he did not remember to which convenience store he and Chihi had gone although he said it was near her apartment. Petitioner said that Chihi remained in the vehicle when he went into the convenience store. Thus, even assuming that a clerk would have testified, or a store video would have shown, that Petitioner purchased rolling papers at the convenience store on the morning of the incident, it is not clear how such evidence aided Petitioner because presumably Chihi would not have been on the video. Petitioner does not explain how such evidence proves that Chihi was with Petitioner, much less that she consented to perform oral sex on him. Finally, the evidence against Petitioner included the cut seatbelt in Chihi's vehicle and the testimony of the two victims, both of whom corroborated each other's testimony in large part. Petitioner did not provide any evidence demonstrating that Ward had a motive to fabricate her testimony. As such, Petitioner has not shown that counsel was deficient for failing to investigate and call this witness or present the video or that a reasonable probability exists that the outcome of the trial would have been different had he done so. Accordingly, claim two is denied pursuant to Section 2254(d).

C. *Claim Three*

Petitioner asserts that counsel rendered ineffective assistance by failing to impeach the testimony of Chihi and Ward.[2] In support of this claim, Petitioner contends that counsel should have impeached Chihi with various inconsistencies she made in her statement to police and in her deposition. Specifically, Petitioner notes *inter alia* Chihi's prior statements regarding (1) where she initially observed Petitioner, (2) where her roommate was when Petitioner approached her, (3) the appearance of the knife, (4) whether her seatbelt was ever unbuckled, (5) when Petitioner started his sexual advances, (6) the manner in which Petitioner drove her car, (7) the time at which Petitioner inquired about her roommate's location, (8) the number of questions Petitioner asked about her roommate, (9) the location of the knife, (10) who exited the vehicle first, (11) who opened her apartment door, and (12) what Petitioner did with the rings taken from the apartment.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief. The state court reasoned that the differences in Chihi's trial testimony and her prior statements were not critical or materially inconsistent.

The record supports the state court's determination. Many of Chihi's prior statements were not inconsistent with her trial testimony, but instead, provided additional details regarding the incident. Moreover, any alleged inconsistencies were not material. Finally, the Court notes that even if counsel had impeached Chihi with these purported

---

[2]Petitioner does not assert how counsel should have impeached Ward's testimony. As such, this allegation does not warrant relief as it is vague and conclusory.

inconsistencies, Ward's testimony and the physical evidence, such as the seatbelt, corroborated Chihi's testimony. As such, Petitioner has not demonstrated that counsel was deficient for failing to impeach Chihi with her prior statements or that a reasonable probability exists that the outcome of the trial would have been different had he done so. Accordingly, claim three is denied pursuant to Section 2254(d).

### D. *Claim Four*

Petitioner contends that counsel rendered ineffective assistance by failing to request a jury instruction on the affirmative defense of abandonment of an attempt to commit a crime. Petitioner argues that the instruction was appropriate in light of the victims' testimony that Petitioner returned the items he took, apologized for his actions, and allowed the victims to leave the apartment.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief. The state court reasoned that Petitioner was not charged with attempt to commit any offense and thus the affirmative defense of abandonment was not applicable. The state court further noted that Petitioner's defense was that he did not commit or attempt to commit any offense.

Petitioner has failed to demonstrate that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland*.

> Florida recognizes the common-law defense of abandonment, also referred to as withdrawal or renunciation. Abandonment is a valid defense only in cases in which a person is charged with attempting to commit an offense, or with committing an offense that involves an attempt as a lesser-included offense. Further, in order to constitute a defense, abandonment must be complete and voluntary. *Thus, in order to assert the abandonment defense, a*

13

> *defendant must present evidence which shows that a voluntary abandonment of the attempt occurred prior to committing the substantive crime*.

Elizabeth Bosek, J.D., et al., Florida Jurisprudence, Criminal Law - Substantive Principles and Offenses, § 285 (2d ed. 2011) (footnotes omitted) (citing *Carroll v. State*, 680 So. 2d 1065, (Fla. 3d DCA 1996) and *Dixon v. State*, 559 So. 2d 354 (Fla. 1st DCA 1990)) (emphasis added).

In the instant case, the evidence established that Petitioner committed and completed the offenses of burglary of a dwelling, petit theft, and false imprisonment prior to taking any action which might support the affirmative defense of abandonment. In other words, Petitioner entered the victims' residences at knife point, took jewelry from Chihi's apartment at knife point, and made Chihi remain with him at knife point before he apologized, returned the jewelry, and allowed Chihi to leave. Thus, the affirmative defense of abandonment was not applicable given the facts of the case.

Furthermore, Petitioner's defense was that Chihi fabricated the offenses because he refused to pay her money for sex. Petitioner's defense was not that he abandoned the offenses. As such, the Court cannot conclude that counsel was deficient for failing to request an abandonment instruction or that Petitioner was prejudiced by counsel's failure to do so. Accordingly, claim four is denied pursuant to Section 2254(d).

### E.    *Claim Five*

Petitioner asserts that counsel rendered ineffective assistance by failing to object to a violation of the Double Jeopardy Clause. In support of his claim, Petitioner argues that his convictions for sexual battery were for the same continuing offense and his conviction

14

for aggravated assault with a deadly weapon was subsumed by his conviction for burglary with assault or battery.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief. The state court determined that the sexual battery convictions did not occur in a single criminal episode. Likewise, the state court concluded that aggravated assault and burglary of a dwelling with an assault or battery do not have identical elements so as to violate double jeopardy.

The Double Jeopardy Clause of the United States Constitution "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). To determine whether a double jeopardy violation has occurred based on multiple convictions stemming from the same conduct, but pursuant to separate statutes, the Court must undertake a two-part analysis. *See Williams v. Singletary*, 78 F.3d 1510, 1513 (11th Cir. 1996). First, the Court must determine "whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct." *Id*. If a clear indication exists of such legislative intent, the double jeopardy bar does not apply. *Id*. However, "[i]f there is no clear indication of legislative intent to impose cumulative punishments, [courts] examine the relevant statutes under the same-elements test of *Blockburger* [*v. United States*, 284 U.S. 299 (1932)]." *Id*. Pursuant to the "same-elements" test, "if each statutory offense requires proof of an element not contained in the other, the offenses are not the 'same' and double jeopardy is no bar to cumulative punishment." *Id*.

In the instant case, it is not clear from the statutory language of the relevant statutes

whether the legislature intended to impose cumulative punishments for aggravated battery and burglary of a dwelling with assault or battery with a deadly weapon. As such, the Court must examine the statutes pursuant to the "same-elements" test.

Pursuant to Florida law, "[a]n 'aggravated assault' is an assault. . . [w]ith a deadly weapon without intent to kill. . . ." Fla. Stat. § 784.021(1)(a) (2004). In contrast, Section 810.02(1)(b)(1), Florida Statutes defines burglary as, "Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter. . . ." Thus, aggravated assault includes the element of use of a deadly weapon, which is not a required element of the offense of burglary. Burglary, however, includes the element of entering a dwelling, which aggravated assault does not. Thus, because each offense required proof of an element not included in the other offense, Petitioner was not subjected to multiple punishments for the same offense, and counsel was not ineffective for failing to raise this argument. *See, e.g.*, *Irizarry v. State*, 905 So. 2d 160, 167 (Fla. 3d DCA 2005) (citing *State v. Reardon*, 763 So. 2d 418, 419 (Fla. 5th DCA 2000) for the proposition that "there is no statutory or constitutional bar to the entry of convictions for both aggravated battery and burglary with a battery arising out of the same criminal episode" because "the crimes do not require proof of identical elements, 'the two offenses are not degrees of the same crime as provided by statute,' and 'neither offense is subsumed by the other.'").

Furthermore, the record establishes that the two sexual battery convictions were not a single criminal episode. Instead, the first sexual battery occurred in Chihi's vehicle,

whereas, the second sexual battery occurred later in Chihi's apartment. As such, counsel was not deficient for failing to object based on double jeopardy, and Petitioner was not prejudiced by counsel's failure to do so. Accordingly, claim five is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V.     *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's

17

assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 8) filed by Ricardo Bailey is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 10th day of November, 2011.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-1 11/10
Counsel of Record
Ricardo Bailey